IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SYLVIA WONASUE                    :
                                  :
     v.                           :   Civil Action No. DKC 11-3657
                                  :
UNIVERSITY OF MARYLAND ALUMNI     :
ASSOCIATION, INC., et al.         :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination action is a partial motion to dismiss filed by Defendants University of Maryland Alumni Association, Inc. ("UMAA"), and Danita D. Nias. (ECF No. 3). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted.

I.  **Background**

According to the complaint, Plaintiff Sylvia Wonasue was employed as the executive manager of UMAA from September 17, 2007, to January 19, 2010. On or about January 13, 2010, she informed UMAA's executive director, Defendant Danita D. Nias, that she was pregnant. At around the same time, Plaintiff was receiving treatment for "severe medical complications" associated with her pregnancy. (ECF No. 1 ¶ 18). She requested "medical leave and reasonable changes to her work schedule" to

facilitate this treatment (*id*. at ¶ 20), but her requests were denied. Ms. Nias suggested that Plaintiff resign instead. When Plaintiff refused to do so, Defendants "showed their clear intent . . . to force her out of her position by, among other examples, changing her work schedule to make it less accommodating, giving her impossible sets of tasks and timeframe[s] to perform them in, [and assigning] duties that she clearly could not perform given her medical condition." (*Id*. at ¶ 23). Plaintiff attempted to keep working, but her health deteriorated and she was ordered by doctors to "go on bed rest and take other medically necessary actions to carry [her] baby to term." (*Id*. at ¶ 26). On or about January 19, 2010, Plaintiff was "constructively terminated" from her position "due to Defendants' refusal [to] accommodate her disability, refusal to change work schedules, and their intent and actions that would and did jeopardize the health of the baby and mother." (*Id*. at ¶ 27).

After exhausting administrative remedies, Plaintiff commenced this action by filing a complaint alleging disability discrimination (counts I-III), retaliation (count IV), denial of due process rights (counts V-VII), violation of the Family Medical Leave Act ("FMLA") (count VIII), and wrongful discharge (count IX). In response, Defendants filed a partial motion to dismiss, arguing that the complaint failed to state a claim as

to counts V-VII and count IX.  (ECF No. 3).  In her opposition papers, Plaintiff voluntarily withdrew counts V-VII as "duplicative" and "unnecessary," but maintained, as to count IX, that she had "adequately asserted a claim based upon state remedies for common law wrongful discharge and for interference with state rights that originate in federal FMLA law."  (ECF No. 7, at 1-2).  Defendants filed reply papers on March 9, 2012.  (ECF No. 8).

**II. Standard of Review**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a) (2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S.

266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677–78 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### III. Analysis

The ninth count of the complaint recites that "Defendant[s] interfered with Plaintiff's exercise of her Maryland rights promulgated by its enforcement of the public policy and rights

4

to leave expressed in the FMLA, and the right [not to] be terminated for requesting leave." (ECF No. 1 ¶ 115). In her opposition papers, Plaintiff clarifies that her claim in this regard is "based upon state remedies for common law wrongful discharge and for interference with state rights that originate in FMLA law." (ECF No. 7, at 2). Defendants contend that this count must be dismissed because "there is no clear mandate of public policy to support [Plaintiff's] claim." (ECF No. 3-1, at 10 (internal marks omitted)).

Under Maryland law, an at-will employment relationship "can be legally terminated at the pleasure of either party at any time." *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 609 (1989) (internal marks omitted). In *Adler v. American Standard Corp.*, 291 Md. 31, 35-36 (1981), the Court of Appeals of Maryland adopted an exception to this general rule, holding that an employee who has been "discharged in a manner that contravenes public policy" may "maintain a cause of action for abusive or wrongful discharge against [her] former employer." Such liability typically arises where an employee refuses "to violate a statutory duty or engage in conduct that violates public policy" or where he or she is terminated "because of the exercise of a legal right[.]" *Parks v. Alpharma, Inc.*, 421 Md. 59, 77 (2011). Thus, "[t]he tort of wrongful discharge is [an] exception to the well-established principle that an at-will

5

employee may be discharged by [her] employer for any reason, or no reason at all." *Wholey v. Sears Roebuck*, 370 Md. 38, 49 (2002).

It is, however, a narrow exception. As the Fourth Circuit explained in *Szaller v. American Nat. Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002):

> An employee asserting that he was wrongfully discharged must specifically identify the clear mandate of Maryland public policy that was violated by his termination. *See, e.g., Adler*, 432 A.2d at 470-72. Maryland's legislative enactments, prior judicial decisions, and administrative regulations serve as the primary sources of the state's public policy. *See, e.g., id*. at 472. Due to a concern with opening the "floodgates of litigation," however, Maryland has not found a mandate of public policy sufficiently clear for purposes of a wrongful discharge action in every state statute or regulation. *See, e.g., Bagwell v. Peninsula Reg'l Med. Ctr*., 106 Md.App. 470, 665 A.2d 297, 310 (1995).
>
> Maryland courts have stressed that in order for a mandate of public policy to be well-established enough to form the basis of a wrongful discharge action, there "must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the relevant topic not a matter of conjecture or interpretation." *Porterfield v. Mascari II, Inc*., 142 Md.App. 134, 788 A.2d 242, 245 (2002); *see also, e.g.,* [*Lee v. Denro, Inc*., 91 Md.App. 822, 830 (1992)]. Maryland has placed these limits on what constitutes a clear mandate of public policy because it

> "limits judicial forays into the wilderness of discerning public policy without clear direction from a legislature or regulatory source." *Milton*, 138 F.3d at 523.

One "limiting factor with respect to adopting a 'new' public policy mandate for a wrongful discharge claim is derived from the generally accepted *purpose* behind recognizing the tort in the first place: to provide a remedy for an otherwise unremedied violation of public policy." *Wholey*, 370 Md. at 52 (emphasis in original) (citing *Chappell v. S. Md. Hosp., Inc.*, 320 Md. 483, 493 (1990) (unnecessary to apply a tort remedy where employee had other civil remedies available under state and federal law); *Makovi*, 316 Md. at 626 (tort remedy unavailable where public policy sought to be vindicated was expressed in a statute that carried its own remedy)). Thus, "the tort of wrongful discharge is not available where statutory remedies exist." *Ervin v. Alliant Techsystems, Inc.*, Civil Action No. RDB-09-03476, 2011 WL 4566112, at *6 (D.Md. Sept. 29, 2011); *see also Porterfield*, 142 Md.App. at 140 ("if the relevant public policy is contained in a statute and the statute provides a remedy, the tort of wrongful discharge is not available"); *Glynn v. EDO Corp.*, 536 F.Supp.2d 595, 615 (D.Md. 2008) ("the Maryland tort is unavailable when the statute relied upon as the source of public policy provides its own remedial scheme for vindication of that policy").

In this case, the source of public policy identified by Plaintiff "originate[s] in FMLA law." (ECF No. 7, at 2). The FMLA, however, is a federal statute that provides its own remedy for any violation. *See* 29 U.S.C. § 2617. Thus, "[a]s a matter of law, the FMLA cannot be a source of public policy on which to base a wrongful discharge claim under Maryland law." *Cooper v. Harbour Inns of Baltimore, Inc.*, No. L-98-2173, 2000 WL 351373, at *8 (D.Md. 2000).

In arguing otherwise, Plaintiff relies on *Danfelt v. Board of County Com'rs of Washington Co.*, 998 F.Supp. 606 (D.Md. 1998). That case had been removed to federal court after the plaintiff filed a complaint in state court alleging breach of contract and wrongful discharge based on the Americans with Disabilities Act ("ADA") and the FMLA. While the complaint in *Danfelt* raised a similar claim to that raised by the plaintiff here, the case is otherwise distinguishable. The issue in *Danfelt* was whether "federal jurisdiction over a state-created claim with an embedded federal component will lie when the federal statute at issue does create a private cause of action." *Id*. at 608. The court explained that it could only have removal jurisdiction if the ADA and/or FMLA "so completely pre-empt [state wrongful discharge laws] that any civil complaint raising this select group of claims is necessarily federal in character," *id.* at 610 (quoting *Metropolitan Life Ins. Co. v.*

*Taylor*, 481 U.S. 58, 63-64 (1987) (internal marks omitted)), and held that "neither the ADA nor the FMLA completely pre-empts Maryland wrongful discharge law," *id*. at 611. At no point did it address whether a claim of wrongful discharge may be premised on the FMLA, which is the issue presented here. Because the FMLA is a federal statute that provides its own remedial scheme, it cannot serve as a basis for Plaintiff's wrongful discharge claim.

**IV. Conclusion**

For the foregoing reasons, Defendants' partial motion to dismiss will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge