IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |
|---|---|
| SYLVIA WONASUE, | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-11-3657 |
| UNIVERSITY OF MARYLAND ALUMNI ASSOCIATION, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This Memorandum Opinion addresses Plaintiff Sylvia Wonasue's Amended Motion for Leave to File First Amended Complaint, ECF No. 47; the Opposition that Defendants University of Maryland Alumni Association ("UMAA") and Danita Nias filed, ECF No. 50, and Plaintiff's Reply, ECF No. 58.[1] A hearing is not necessary. *See* Loc. R. 105.6. For the reasons stated herein, Plaintiff's Amended Motion is DENIED.

### I. BACKGROUND

According to Plaintiff, she was working as executive manager of UMAA when she began

---

[1] Plaintiff filed her Reply after the close of business on July 12, 2013, notwithstanding the May 23, 2013 deadline set after Plaintiff requested an extension of the original May 13, 2013 deadline. ECF Nos. 53 & 54. Nonetheless, the Court has considered the arguments set forth in Plaintiff's Reply.

Plaintiff also filed a Motion for Leave to File First Amended Complaint, ECF No. 38, to which Defendants filed an Opposition, ECF No. 42. That motion is DENIED AS MOOT, in light of this Memorandum Opinion and the accompanying Order. Defendants incorporate their Opposition to Plaintiff's Motion for Leave to File First Amended Complaint ("Defs.' 1st Opp'n") into their Opposition to Plaintiff's Amended Motion ("Defs.' 2d Opp'n"). Defs.' 2d Opp'n 1.

having complications with her pregnancy and requested reasonable accommodations and medical leave. Compl. ¶¶ 9, 17-23, ECF No. 1. Plaintiff claims that her supervisor, Ms. Nias, denied her requests, and she was constructively discharged from her position. *Id.* ¶¶ 21, 27. Thereafter, Plaintiff brought suit against UMAA and Ms. Nias, claiming, *inter alia*, disability discrimination, retaliation, and unlawful termination in violation of Md. Code Ann., State Gov't § 20-602, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the Rehabilitation Act, 29 U.S.C. § 794, as well as interference with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615. Compl. 1-2. This Court dismissed all of Plaintiff's other claims, which alleged denial of due process rights and wrongful discharge. June 1, 2012 Order, ECF No. 10.

Plaintiff now seeks leave to amend. She wishes to add University of Maryland, College Park ("UMCP") as a defendant on the basis that UMAA was a "shell corporation" of UMCP. Am. Compl. ¶¶ 11, 17, ECF No. 47-1. Plaintiff also seeks to add Janice McMillan, who "served as Director of Human Resources of the UMAA," as a defendant and to allege that the individual defendants were agents of UMAA and/or UMCP. *Id.* ¶¶ 13 & 15-16. Plaintiff's amendment provides additional details about Plaintiff's alleged request for accommodations and Defendants' alleged refusal to oblige. *Id.* ¶¶ 24-39. Plaintiff proposes to revise Count I, which alleged violation of the ADA, to include violation of "the Pregnancy Discrimination Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k)," and to add factual allegations to this Count. Am. Compl. ¶¶ 50-95. Similarly, as amended, Count IV would encompass not only the Rehabilitation Act, but also the ADA, Title VII, 42 U.S.C. § 2000e-3, and the FMLA. Am. Compl. ¶ 130. Additionally, Plaintiff now seeks an "award of front pay and benefits" or

reinstatement "to a position and salary level which the Plaintiff would have had" if she had not been constructively discharged. *Id.* at 34.

Plaintiff also wishes to adds a new count in which she requests "Class Final Injunctive Relief and Declaratory Relief" pursuant to Fed. R. Civ. P. 23(b)(2). She states that "[t]he proposed class has approximately twenty-five (25) employees" who are "subject to the same unlawful policies and practices as described in the instant complaint." Am. Compl. ¶¶ 147-48. Plaintiff alleges that her claims "are typical of the designated class" and that she is "an adequate representative to address the class claim." *Id.* ¶¶ 150-51. According to Plaintiff, "numerous questions of law and fact [are] common to the class," such as "[w]hether the unlawful policies and practices set forth in this Complaint took place as alleged"; whether UMAA and UMCP are "an Integrated and/or Joint Employer for some or all employment purposes"; and "[w]hether the class members are entitled to the relief as requested in this complaint." *Id.* ¶ 149.

## II. STANDARD OF REVIEW

Whether to grant a motion for leave to amend is within this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15(a)(2) typically provides the standard for whether to grant a motion for leave to amend that a plaintiff files more than twenty-one days after defendants file a responsive pleading or motion to dismiss. *See id.*; Fed. R. Civ. P. 15(a)(2). However, when the plaintiff moves to amend after the deadline established in the scheduling order for doing so, Rule 16(b)(4) becomes the starting point in the Court's analysis. *CBX Techs., Inc. v. GCC Techs., LLC*, No. JKB-10-2112, 2012 WL 3038639, at *3 (D. Md. July 24, 2012). Thus, "once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under [Rule] 15(a).'"

*Id.* (quoting *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631 (D. Md. 2003)); *see Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).

"'"[G]ood cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.' . . . Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *CBX Techs., Inc.*, 2012 WL 3038639, at *4 (quoting *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) (citation omitted)). The Court focuses "less . . . on the substance of the proposed amendment and more . . . [on] the timeliness of the motion to amend 'and the reasons for its tardy submission.'" *Id.* (quoting *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373–74 (D. Md. 2002)). This is because "[a] court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Id.* (quoting *Potomac Elec. Power Co.*, 190 F.R.D. at 376 (citation and quotation marks omitted)). Specifically, the Court considers whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party. *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768-69 (D. Md. 2010). When "at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline," a plaintiff has "good cause" for moving to amend at a later date. *Id.* at 768; *see In re Lone Star Indus., Inc. Concrete R.R. Cross Ties Litig.*, 19 F.3d 1429, 1994 WL 118475, at *11 (4th Cir. Apr. 7, 1994) (concluding that district court abused its discretion when it denied motion to amend to add a new claim after deadline set in scheduling order had passed).

If the Court concludes that the plaintiff had good cause for moving to amend after the deadline has passed, then, pursuant to Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." The Court only should deny leave to amend if amendment

"would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility," *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); *see Forman*, 371 U.S. at 182 (stating that the court also may deny leave if the plaintiff has amended more than once already without curing the deficiencies in the complaint); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Otherwise, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," and the plaintiff moves to amend, the Court should grant the motion so that the plaintiff has the "opportunity to test his claim on the merits." *Forman*, 371 U.S. at 182.

Determining whether amendment would be futile does not involve "'an evaluation of the underlying merits of the case.'" *MTB Servs.*, 2013 WL 1819944, at *3 (quoting *Next Generation Grp. v. Sylvan Learning Ctrs., LLC.*, No. CCB–11–0986, 2012 WL 37397, at *3 (D. Md. Jan. 5, 2012)). Rather, "the merits of the litigation" are only relevant to the Court's ruling on a motion for leave to amend if "a proposed amendment may clearly be seen to be futile," *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), such as "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards," *Katyle v. Penn Nat. Gaming Inc.*, 637 F .3d 462, 471 (4th Cir. 2011); *see MTB Servs.*, 2013 WL 1819944, at *3.

### III. DISCUSSION

The Scheduling Order in this case set an original deadline of July 16, 2012 for "[m]oving for joinder of additional parties and amendment of pleadings." Scheduling Order, ECF No. 11. Notably, the Order provided that it would "not be changed except for good cause." *Id.* Subsequent modifications of the Scheduling Order extended the deadline for joining parties and amending the pleadings to August 16, 2012 and the discovery deadline to February 15, 2013. *See* ECF Nos. 14, 16, 31, 35 & 40. Plaintiff filed her Motion for Leave to File First Amended

Complaint on March 7, 2013, and her Amended Motion on April 10, 2013. Therefore, my analysis begins with whether Plaintiff had good cause for moving to amend after the deadline set by the Scheduling Order. *See CBX Techs., Inc.*, 2012 WL 3038639, at *3; Fed. R. Civ. P. 16(b)(4).

Plaintiff moves to amend based on information allegedly obtained late in discovery, including specifically "information first provided during the deposition of the Defendants on February 7 and 8, 2013," one week before the discovery deadline. Pl.'s Am. Mot. 2. In defense of the late scheduling of these depositions, Plaintiff notes that "Defendants belatedly served their answers to Plaintiff's interrogatories on January 23, 2013." Pl.'s Am. Mot. 3. According to Defendants, Plaintiff already has caused undue delay in this case, which has progressed too far for amendment to be granted fairly. Defs.' 2d Opp'n 1-2. Additional context is necessary.

The Court issued the original scheduling order on March 1, 2012, and Defendants served their document requests and interrogatories on June 14, 2012. Defs.' 1st Opp'n 5. Plaintiff first served interrogatories on October 25, 2012, more than four months later and ten days after the October 15, 2012 discovery deadline in effect at that time. *Id.* at 5. Thereafter, at Plaintiff's request and over Defendants' opposition, the Court extended the discovery deadline to January 15, 2012. *Id.* When Plaintiff asked on January 2, 2013 to depose Ms. Nias and UMAA's corporate designee the following week, Defendants objected. *Id.* The parties agreed to extend the discovery deadline to February 15, 2013 to accommodate the depositions, and they agreed that Defendants' responses to Plaintiff's interrogatories would be due January 21, 2013. *Id.* Thus, although Defendants' responses were filed more than thirty days after Plaintiff served the interrogatories, they were only two days late, and it was Plaintiff's delay in serving interrogatories that occasioned her receipt of Defendants' responses after the original discovery

6

deadline and only a few weeks before the revised discovery deadline. This considerable, avoidable delay shows that Plaintiff did not make "diligent efforts" to meet the deadlines set in the Scheduling Order. *See CBX Techs., Inc.*, 2012 WL 3038639, at *4 (citations and quotation marks omitted). Moreover, it suggests that Plaintiff did not act in good faith. *See Tawwaab*, 729 F. Supp. 2d at 768-69.

Defendants contend that Plaintiff had amassed a number of documents by December 7, 2012, three months before she filed her original Motion, Defs.' 2d Opp'n 5, and she "had personal knowledge of the information she now claims was discovered for the first time during the depositions she took," *id.* at 6. Specifically, Plaintiff alleges that she learned for the first time through the depositions that Ms. Nias "was not employed by the UMAA, but was instead an employee of the University of Maryland College Park," Pl.'s Am. Mot. 3; and Ms. Nias "reported to Brodie Remington, a UMCP employee, for approval for even minor personnel issues," *id.* at 4. Yet Plaintiff testified in her November 1, 2012 deposition that Ms. Nias was "paid by the State, but . . . did work for the Alumni Association," Defs.' 2d Opp'n Ex. 4, Wonasue Dep. 60:10-12, ECF No. 50-4, and that Ms. Nias reported to Brodie Remington, *id.* at 125:4-7. Also, according to Defendants, as of December 7, 2012, Plaintiff had Ms. Nias's personnel file, which showed that she was a UMCP employee, and the UMAA organization chart, which showed that Ms. Nias reported to Mr. Remington. Defs.' 2d Opp'n 5. Again, this unnecessary delay, as well as the misrepresentation in her Amended Motion that she was unaware of these facts prior to the depositions, suggest that Plaintiff is not acting in good faith. *See Tawwaab*, 729 F. Supp. 2d at 768-69.

Additionally, Defendants insist that, in moving to amend, Plaintiff acts in bad faith because the Amended Complaint itself includes "blatant misrepresentations." Defs.' 2d Opp'n 7.

In her Amended Complaint, Plaintiff claims that "[d]uring the time period of her employment, Plaintiff became pregnant and would require emergency services to protect her own and her unborn child's health," and that "[o]n January 13, 2010, Plaintiff experienced a life threatening complication with her pregnancy requiring emergency treatment at a medical facility in order to stabilize her pregnancy and her own health." Am. Compl. ¶¶ 25-26. Yet, in her November 1, 2012 deposition, Plaintiff testified that, when she went to the hospital on January 13, 2010, the doctor informed her that she had nothing other than "morning sickness" and "low potassium" and he "didn't think it was a big deal," although he was "worried that it could create a problem." Defs.' 2d Opp'n Ex. 5, Wonasue Dep. 151:7-13, 155:4-5, 157:1-3, ECF No. 50-5. The only "treatment" the doctor prescribed was "potassium medication" and "pills to help with the nausea." *Id.* at 154:12-14. It is at least an exaggeration to characterize this event as a "life threatening complication . . . requiring emergency treatment." Plaintiff does not seek to make this amendment in good faith. *See Tawwaab*, 729 F. Supp. 2d at 768-69.

In further support of amending, Plaintiff claims that she learned through the depositions that "UMAA was not a functional organization separate and apart from the UMCP," and that Defendants' search for responsive ESI and document production was incomplete, in part because they "refused to search for . . . documents . . . within the possession of the UMCP." Pl.'s Am. Mot. at 4-6. Perhaps newly-acquired knowledge of these facts could support a motion for an extension of the discovery deadline, to permit Plaintiff to subpoena UMCP for the documents she seeks. Plaintiff also claims that possible defendant Janice McMillan, a UMAA employee who handled human resources matters, determined that the FMLA did not apply to UMAA, Pl.'s Am. Mot. at 5; and that Plaintiff's predecessor "was granted an accommodation of four to six months to work from home for a lesser medical condition," *id.* at 4. Although these facts might

bolster Plaintiff's case, they, like Plaintiff's purported knowledge of Defendants' incomplete discovery responses, are not "needed" for her "to prove . . . her claim." *See Tawwaab*, 729 F. Supp. 2d at 768.

Defendants contend that the proposed amendments will prejudice them by "further prolonging the disposition of this case." Defs.' 2d Opp'n 6. In their view, the "additional causes of action and additional parties would totally alter the basis of the original action, and require the parties to engage in additional discovery, which would further delay proceedings." *Id.* at 2-3. Indeed, if Plaintiff amended the Complaint to add additional defendants, it would inaugurate an entirely new round of discovery, which closed months ago, on class certification and other issues and, in essence, render moot, or at least minimally relevant, everything that has happened to date. Moreover, the dispositive motions deadline of May 15, 2013 has been suspended and will need to be extended after the Court resolves Plaintiff's motion to amend so that the parties may tailor their motions to the operative complaint. *See* May 15, 2013 Ltr. Mot, ECF No. 55; May 16, 2013 Paperless Order, ECF No. 56. Thus, if the Court granted Plaintiff's Amended Motion, Plaintiff's delay in amending the Complaint would prejudice the existing Defendants by postponing the disposition of the lawsuit. *See Tawwaab*, 729 F. Supp. 2d at 768-69. Because Plaintiff has not acted in good faith in delaying almost eight months in moving to amend, such that discovery has closed and the dispositive motions deadline has to be extended, and because the delay will prejudice the Defendants, Plaintiff has not shown good cause for amending her Complaint at this late juncture. *See id.*

Defendants also argue that Plaintiff's proposed amendments are futile. Defs.' 1st Opp'n 7-14; Defs.' 2d Opp'n 7. They contend that the new defendants cannot be added at this time because they were not named in the EEOC charge, the statutes of limitations have passed for the

9

FMLA and state law discrimination claims, and the new defendants do not "relate back" under Fed. R. Civ. P. 15(c). Defs.' 1st Opp'n 7-12. Defendant is correct that a defendant must be named in an EEOC charge before a plaintiff files suit against that defendant on an ADA or Rehabilitation Act claim. *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 458-59 (4th Cir. 1988) ("Under Title VII, a civil action may be brought after administrative proceedings have ended or conciliation attempts have failed only 'against the respondent named in the [administrative] charge.'") (quoting 42 U.S.C. § 2000e-5(f)(1)); 29 U.S.C. § 794a(a)(1) (42 U.S.C. § 2000e-5(f) applies to Rehabilitation Act claims); *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 Fed. App'x 314, 320-21 (4th Cir. 2011) (applying 42 U.S.C. § 2000e-5(f) to ADA). Naming the potential defendant in the EEOC charge provides notice of the possible lawsuit to that person and affords that person the opportunity to comply with the law without a court order. *See Alvarado*, 848 F.2d at 458-59. Because neither UMCP nor Ms. McMillan was named in the EEOC charge, such that Plaintiff cannot maintain a suit against either potential defendant, amendment to add UMCP or Ms. McMillan as a defendant on the ADA and Rehabilitation Act claims would be futile. *See id.* at 458; *Katyle*, 637 F.3d at 471; *MTB Servs.*, 2013 WL 1819944, at *3.

Likewise, the statute of limitations on an FMLA claim is, at most, three years, *Bosse v. Balt. Cnty.*, 692 F. Supp. 2d 574, 583 (D. Md. 2010) (citing 29 U.S.C. § 2617(c)(1)-(2)), and the statute of limitations on a claim for discrimination under Maryland statutory law is two years, State Gov't § 20-1013(a)(3). Because the alleged adverse employment action occurred on January 19, 2010, Plaintiff had until January 19, 2012 to bring claims under the Maryland statute and perhaps until January 19, 2013 under the FMLA. Moreover, the Maryland statute operates like the ADA and Rehabilitation Act in that the defendant must be named in an administrative

charge before suit is filed. State Gov't § 20-1013(a)(1). Neither Ms. McMillan nor UMCP was named in an administrative charge. Therefore, Plaintiff cannot bring claims against new defendants under either statute. *See* 29 U.S.C. § 2617(c)(1)-(2); State Gov't § 20-1013(a)(1) & (3).

A plaintiff may add a new defendant, notwithstanding the running of the statute of limitations, if the addition of the new defendant "relates back to the date of the original pleading." Fed. R. Civ. P. 15(c). For the amendment to "relate[] back," the new party must have, "within the period provided by Rule 4(m) for serving the summons and complaint, . . . received such notice of the action that it will not be prejudiced in defending on the merits; and . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Id.*; *Goodman v. Praxair, Inc.*, 494 F.3d 458, 468 (4th Cir. 2007) (discussing Fed. R. Civ. P. 15(c) in context of adding new party). "These core requirements preserve for the new party the protections of a statute of limitations" by "assur[ing] that the new party had adequate notice *within the limitations period* and was not prejudiced by being added to the litigation." *Id.* at 470. Thus, a proposed new party "is entitled to repose" if that party was not "given notice that it should have been named in an existing action" and therefore "would reasonably believe that the time for filing suit had expired." *Id.* at 472 (citing Fed. R. Civ. P. 15(c)(3)(B)). Simply put,

> The mandate remains that a plaintiff has the burden of locating and suing the proper defendant within the applicable limitations period. The Federal Rules do not demand a perfect effort at the outset, but they do demand that when an amendment seeks to correct an imperfect effort by changing parties, the new party must have received adequate notice within the limitations period and suffer no prejudice in its defense.

*Id.* at 473.

11

Here, Plaintiff has not shown that she made an effort to "locat[e] and su[e] the proper defendant." *Id*. To the contrary, at least as of November 1, 2012, Plaintiff knew that some UMAA employees, including Ms. Nias, worked for the State of Maryland and UMCP, which should have prompted her to investigate the relationship between the entities and to consider adding UMCP as a defendant. Plaintiff has not demonstrated that she did not have that knowledge of UMCP's relationship to UMAA or the opportunity to investigate the relationship within the limitations period. Moreover, Plaintiff has not shown that UMCP had notice that it should have been a defendant in this suit. As Defendants noted, the Complaint did not refer to UMCP; the EEOC charge did not name UMCP; and UMAA and UMCP did not share counsel. Def.'s 1st Mem. 10. Thus, UMCP may not have known of the suit against UMAA and, even if it knew, it did not know necessarily that it also should have been a defendant. *Cf. Goodman*, 494 F.3d at 473-74 (proposed new defendant had notice where "the complaint made conceptually clear" who the intended defendant was and the named defendant and proposed defendant were "parent and subsidiary" that had "employed the same attorneys," such that there was no "worry that [the proposed defendant] was caught by surprise when the complaint was amended"). Similarly, Plaintiff has not shown that Ms. McMillan would have known, from reading the Complaint, that she should have been named as a defendant. Because neither proposed defendant had notice of a possible suit against them during the limitations period, amendment to add UMCP and Ms. McMillan does not "relate[] back to the date of the original pleading." Fed. R. Civ. P. 15(c); *see Goodman*, 494 F.3d at 470-74. Therefore, such amendment would be futile as the limitations periods have run. *See Katyle*, 637 F .3d at 471; *MTB Servs.*, 2013 WL 1819944, at *3.

Defendants argue that Plaintiff's proposed class action claim also is futile "because it fails to state a claim under Rule 23(a) and (b)." Defs.' 1st Mem. 13. Rule 23(a) requires a showing of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)-(4). "'Rule 23 does not set forth a mere pleading standard.'" *Murdoch v. Rosenberg & Assoc., LLC*, 2013 WL 1209144, at *7 (D. Md. 2013) (quoting *Wal–Mart Stores, Inc. v. Dukes*, ––– U.S. –––, 131 S.Ct. 2541, 2551 (2011)). Rather, "'[a] party seeking class certification must affirmatively demonstrate [her] compliance with the Rule—that is, [s]he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.'" *Id.* (quoting *Wal–Mart*, 131 S. Ct. at 2551).

Plaintiff identifies the class as "UMAA designated employees . . . who are not UMS/UMCP designated employees." Am. Compl. ¶ 146. It is not clear during what period or for how long an individual would need to work for UMAA to be a class member. Plaintiff alleges that "her claims regarding the Defendants' unlawful policies and practices are typical of the designated class" and that she is "an adequate representative to address the class claim regarding the Defendants' unlawful policies and practices." *Id*. ¶¶ 150-51. According to Defendants, Plaintiff makes only "general, thread-bare allegations" that "contain[] absolutely no substantive discussion of the rules' requirements." Defs.' 1st Mem. 14. It is true that these "conclusory and vague" allegations are unlikely to satisfy Rule 23(a)'s adequacy and typicality requirements. *Murdoch*, 2013 WL 1209144, at *7.

Moreover, with regard to numerosity, Plaintiff states that "[t]he proposed class has approximately twenty-five (25) employees." Am. Compl. ¶ 147. Yet, UMAA only has "usually between 12 and 15 full-time employees." McMillan Dep. 8:4-5. Although "'no specified number is needed to maintain a class action,'" the idea is that "the class be 'so numerous that

joinder of all members is impracticable.'" *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012) (quoting *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984)) (other citations omitted); *see Kelley v. Norfolk & W. Ry.*, 584 F.2d 34, 35-36 (4th Cir. 1978) (concluding that district court did not err in finding that proposed class of eight to twenty-five members did not satisfy numerosity requirement). Notably, "it is exceedingly rare to certify classes with less than 25 members." *Kennedy v. Va. Polytechnic Inst. & State Univ.*, No. 7-08-cv-579, 2010 WL 3743642, at *3 (W. D. Va. Sept. 23, 2010) (collecting cases). *But see Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 & n.9 (4th Cir. 1967) (concluding that "eighteen is a sufficiently large number to constitute a class in the existing circumstances," in which "[t]he class might also be said to include those Negro physicians who are not now members of the community because of the discriminatory practices of hospitals there, but who would desire to practice medicine in the area if racial bars were removed"). Considering that UMAA has no more than about fifteen employees, McMillan Dep. 8:4-5, joinder would not be impracticable. Further, Plaintiff has not shown that the class, whether it includes current or former employees, would be large enough to satisfy the numerosity requirement. *See In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. at 337. Thus, Plaintiff has not demonstrated a basis for proceeding under Rule 23(a).[2] Therefore, amendment to include the class action claim stated in the Amended Compliant would be futile. *See Katyle*, 637 F .3d at 471; *MTB Servs.*, 2013 WL 1819944, at *3.

---

[2] Because Plaintiff failed to show a basis for proceeding under Rule 23(a), the Court need not consider whether she has shown that class certification is appropriate under any of the circumstances listed in Rule 23(b)(1)-(3).

## IV. CONCLUSION

In sum, for the reasons stated above, Plaintiff's Amended Motion for Leave to File First Amended Complaint is DENIED.

Dated: June 13, 2013                                         /S/
                                                    Paul W. Grimm
                                                    United States District Judge

lyb