# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| SYLVIA WONASUE, | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-11-3657 |
| UNIVERSITY OF MARYLAND ALUMNI ASSOCIATION, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This Memorandum Opinion addresses and disposes of Plaintiff Sylvia Wonasue's Motion to Extend Time for Response and to Accept Response Filed Out of Time, ECF No. 65; the opposition that Defendants Danita Nias and the University of Maryland Alumni Association ("UMAA") filed, ECF No. 66; and Plaintiff's Reply, ECF No. 69. For the reasons that follow, Plaintiff's motion is DENIED.

## I. BACKGROUND

Ms. Wonasue brought this suit for, *inter alia*, disability discrimination, retaliation, and unlawful termination after Defendants allegedly denied her request for reasonable accommodations while she was pregnant, and then constructively discharged her from her position. Compl. ¶¶ 9, 17–23, 27, ECF No. 1. Defendants filed their Motion for Summary Judgment, ECF No. 64, on July 19, 2013, and Ms. Wonasue's response was due August 5, 2013. Docket. Ms. Wonasue did not file an opposition. Instead, she filed the pending motion on September 17, 2013, six weeks after the response deadline, seeking leave to file her response to

Defendants' motion on September 20, 2013. This was Ms. Wonasue's first request for additional time to respond, and her first indication that she intended to respond to Defendants' motion.

This was not, however, the first time Ms. Wonasue requested an extension in this case; she has been indifferent to the Court's scheduling order since the inception of this case. In February, 2012, she filed a consent motion for extension of time to respond to Defendants' Motion to Dismiss, ECF No. 5, which Chief Judge Chasanow, who was assigned to this case at that time, granted, ECF No. 6; in June, 2012, she asked for an extension of the scheduling order deadline, ECF No. 12, which Chief Judge Chasanow granted, ECF No. 14; and she moved for an extension of time to complete discovery on November 2, 2012, ECF No. 28, which Chief Judge Chasanow granted, ECF No. 31. Also, she requested additional time to respond to my March 27, 2013 Letter Order, ECF No. 46, which I granted, ECF No. 48; in April, 2013, she requested additional time to reply to Defendants' opposition to Plaintiff's Motion for Leave to File First Amended Complaint, [1] ECF No. 46, which I denied as moot, ECF No. 48; in May, 2013, she requested additional time to file a reply to Defendants' opposition to Plaintiff's Amended Motion for Leave to File First Amended Complaint, ECF No. 53, which I granted, ECF No. 54; and she requested additional time to complete discovery on June 14, 2013, ECF No. 61, which I denied, ECF No. 63.

Additionally, on September 13, 2012, Chief Judge Chasanow noted that Ms. Wonasue failed to file a timely response to Defendants' Motion to Compel, ECF No. 19. Ms. Wonasue

---

[1] Plaintiff moved to amend her complaint after the deadline set by the Scheduling Order and after the close of discovery. *See Wonasue v. Univ. of Md. Alumni Ass'n*, --- F.R.D. ----, 2013 WL 3009316, at *3 (D. Md. June 14, 2013). In denying Plaintiff's motion, I noted the delays Plaintiff caused in discovery and in moving to amend, and I stated that the "considerable, avoidable delay[s]," along with misrepresentations Plaintiff made in her Amended Motion for Leave to file First Amended Complaint and the Amended Complaint, "show[ed] that Plaintiff did not make 'diligent efforts' to meet the deadlines set in the Scheduling Order" and "suggest[ed] that Plaintiff did not act in good faith." *Id.* at *3–4.

also missed the deadline to reply to Defendant's opposition to her Amended Motion for Leave to File First Amended Complaint, filing her reply almost three weeks beyond the extended deadline, at which time I still considered it. *See Wonasue v. Univ. of Md. Alumni Ass'n*, --- F.R.D. ----, 2013 WL 3009316, at *1 n.1 (D. Md. June 14, 2013). The parties also moved jointly twice for additional time to complete discovery, ECF Nos. 15 & 34, which the Court granted, ECF Nos. 16 & 35; and for additional time to file dispositive motions, ECF Nos. 39 & 55, which I granted in full the first time, ECF No. 40, and in part the second time, ECF No. 56. These repeated requests contravene the requirement of the Maryland Rules of Professional Conduct that counsel "make reasonable efforts to expedite litigation consistent with the interests of the client." Md. R. Prof'l Conduct R. 3.2; *see* Loc. R. 704.

Simply put, Plaintiff's serial failures to prosecute her case in a timely fashion do not amount to a trivial annoyance. Her dilatory conduct has multiplied the burden and expense for Defendants, who have filed oppositions to certain of her requests for additional time, and it has consumed court time more profitably spent on other matters to resolve these disputes. Further, her on-again, off-again approach to this litigation has made a mockery of the Court's scheduling order, which is designed to ensure the timely resolution of the case. A Rule 16 scheduling order is not an aspirational schedule to be ignored if inconvenient, but rather an order that must be obeyed absent good cause. *See Jones v. Koons Auto., Inc.*, No. DKC-09-3362, 2013 WL 3713845, at *8 (D. Md. July 15, 2013) ("A court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" (quoting *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 376 (D. Md. 1999) (citation and quotation marks omitted)); *CBX Techs., Inc. v. GCC Techs., LLC*, No. JKB-10-2112, 2012 WL 3038639, at *3 (D. Md. July 24, 2012) (same); Metts v. Airtran Airways, Inc.,

No. DKC-10-466, 2010 WL 4183020, at *3 (D. Md. Oct. 22, 2010) ("[C]ourt deadlines are not mere suggestions or guideposts.").

Further compounding the problem in this case, when granted additional time to file motions or respond, Ms. Wonasue and her counsel have made meritless representations to the Court that have prolonged the litigation process. For example, at the March 26, 2013 hearing, Plaintiff's counsel asserted that Defendant put an attorney–client communication at issue during the deposition of Ms. Nias, Plaintiff's spervisor, and on that basis, Plaintiff's counsel sought to depose UMAA's counsel or Ms. Nias regarding the information that Ms. Nias allegedly sought to discuss with counsel. When asked where in the deposition transcript this occurred, Plaintiff's counsel explained that he had not obtained the transcript of Ms. Nias's deposition and relied instead on his notes. A review of the transcript revealed that Plaintiff's counsel made a wildly exaggerated claim and that his notes diverged considerably from the actual testimony, and Ms. Nias had not testified that she wished to consult counsel. *See* May 6, 2013 Ltr. Order 1–2, ECF No. 52.

Similarly, in Ms. Wonasue's proposed Amended Complaint, which I denied her leave to file, she claimed that she "experienced a life threatening complication with her pregnancy requiring emergency treatment at a medical facility" on January 13, 2013, Am. Compl. ¶¶ 25–26, ECF No. 47-1, even though she had "testified that, when she went to the hospital on January 13, 2010, the doctor informed her that she had nothing other than 'morning sickness' and 'low potassium' and he 'didn't think it was a big deal,' although he was 'worried that it could create a problem,'" and "[t]he only 'treatment' the doctor prescribed was 'potassium medication' and 'pills to help with the nausea,'" June 14, 2013 Mem. Op. 8 (citations to Wonasue Dep. omitted). Further, Plaintiff attempted to amend her complaint to file a class action when class certification

clearly was not appropriate. *See id.* at 13–14. The Maryland Rules of Professional Conduct proscribe such representations. *See* Md. R. Prof'l Conduct R. 3.1 & 3.3.

A party may be excused from a single or occasional failure to meet a scheduling deadline, and a court ought to be mindful that even the most diligent lawyer or ardent party may need an extension of time to meet filing obligations. Where missed deadlines become the norm rather than the exception, however, there comes a time when the court must say that enough is enough. In this case, that time is now. It is noteworthy that this is not the first time Ms. Wonasue has taken a recess from pursuing her case. On September 19, 2012, Plaintiff's counsel, in an *ex parte* submission to Chief Judge Chasanow, who was assigned to the case at that time, stated that "shortly after filing the case [approximately nine months earlier, on December 20, 2011], Ms. Wonasue breached her retainer agreement with [the] firm" and "then stopped communicating with [the firm]." Sept. 19, 2012 Ltr. 1, ECF No. 21. Plaintiff's counsel added that "[o]nly recently, on Friday, September 14, 2012, did Wonasue resume communications with [the firm]." *Id*. Plaintiff's counsel said that the firm "initially continued as Ms. Wonasue's attorneys for purposes of preserving her rights, in the hope and belief that she could resume her participation in the litigation . . . ." Sept. 19, 2012 Ltr. 2. He stated that in his "previous communications with opposing counsel, [he] tried to remain as responsive as possible without revealing [his] client's issues." *Id*. Also, he assured Chief Judge Chasanow that he had had "recent regular contact" with Ms. Wonasue and "believed that [they] could move forward to address remaining discovery issues, mediation and, if necessary, trial." *Id.* Given the current filing, it does not appear that communications between Ms. Wonasue and her counsel have improved from where they stood when she first sought to excuse her failure to pursue her case in a timely manner.

Against this backdrop, I consider Ms. Wonasue's current request for an extension of time to file a response that was due more than six weeks before she requested additional time.

## II. DISCUSSION

Fed. R. Civ. P. 6(b)(1)(B) provides that, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." A showing of excusable neglect "is not eas[]y . . . , nor was it intended to be." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996). The Fourth Circuit has emphasized that "'a district court should find excusable neglect only in the *extraordinary cases* where injustice would otherwise result.'" *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 220 (4th Cir. 2011) (quoting *Thompson*, 76 F.3d at 534 (citation omitted)) (emphasis in *Thompson*) (considering excusable neglect in context of Fed. R. App. P. 4(b)).

> Whether neglect is "excusable" has been described by the Supreme Court as "at bottom an equitable [inquiry], taking account of all relevant circumstances," including the following: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).
>
> [T]he third *Pioneer* factor—the reason for the delay—is the "most important." *Thompson*, 76 F.3d at 534.

*Fernandes v. Craine*, ---- Fed. App'x ----, 2013 WL 4427809, at *1–2 (4th Cir. Aug. 20, 2013).

For example, in *Smith v. Look Cycle USA*, No. 1:11-cv-1080 (GBL/JFA), 2013 WL 1234074, at *1 (E.D. Va. Mar. 19, 2013), the court considered the plaintiff's motion for leave to file an opposition to the defendant's motion to strike the plaintiff's expert. There,

> Plaintiff's counsel (1) filed the Oppositions between five and ten days later than demanded by the Local Rules, (2) failed to seek leave of the Court until after the passage of the deadline set forth in the Local Rules, (3) failed to acknowledge his

6

> untimeliness until after Defendant moved to strike, (4) claim[ed] that computer problems prevented timely filing, and (5) failed to notify or otherwise contact defense counsel or the Court regarding these issues prior to missing the filing deadline.

*Id.* at *1. The court concluded that the plaintiff's neglect was not excusable and denied the plaintiff's motion, because "Plaintiff's reason for filing d[id] not demonstrate the extraordinary circumstance that provides the basis for an extension pursuant to Rule 6(b)(1)(B)," and "Plaintiff's counsel fail[ed] to make a showing to overcome the significant impact of the third factor," i.e., Plaintiff's reason for delay. *Id.* at *5. Specifically, the court reasoned that the plaintiff's counsel "never contacted the Court or opposing counsel prior to the deadline to indicate anticipating difficulty in timely filing," even though he "could have provided notice to the Court prior to the filing deadline." *Id.* It found minimal prejudice to the non-moving party and a delay that "minimally affected the judicial proceedings." *Id.* Noting again that "Plaintiff failed to notify the Court, failed to notify defense counsel, failed to contemporaneously address the untimeliness in the motion, and only filed for leave after Defendant moved to strike the untimely filings," the court stated that "[w]hile these these actions do not necessarily lead to a conclusion of bad faith, such actions and omissions do not counterbalance the detriment of the third *Pioneer* factor focusing on the reason for the filing delay." *Id.*

Courts in the Fourth Circuit have denied motions to respond to summary judgment motions out of time. In *United States v. Pritchett*, No. 5:09-cv-322-F, 2011 WL 197763 (E.D.N.C. Jan. 20, 2011), the defendants filed an untimely opposition to the Government's summary judgment motion, but "did not acknowledge the untimely nature of their filings." *Id.* at *3. At the court's direction, defendants then filed a motion for an extension of time to file the untimely opposition, which the court denied because defendants failed to show excusable neglect. *Id.* The court observed that, "although Defendants' delay is not likely to be unduly

7

prejudicial to the Government, the other factors this court must consider weigh against making a finding that Defendants have demonstrated excusable neglect." *Id.* at *4. It reasoned that "Defendants' response was overdue by almost a month," and the defendants had not provided "a plausible reason for the delay." *Id.* In *Key v. Robertson*, 626 F. Supp. 2d 566, 576 (E.D. Va. 2009), the defendants moved for summary judgment. Key did not file his opposition, and he did not request additional time to file it until three days after the response deadline. *Id.* The court noted that "such motions are 'looked upon with disfavor' even when timely filed," and 'such disfavor can only increase when such a motion is itself not timely filed." *Id.* The only reason Key gave to justify his delay was that "his counsel had been extremely busy as of late." *Id.* at 577 (citations and quotation marks omitted). Because "Plaintiff d[id] not provide any reason in his motion that the court consider[ed] to be 'excusable neglect' within the meaning of Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure," the court denied the plaintiff's motion. *Id.*

Courts in the Fourth Circuit also have granted summary judgment without considering untimely oppositions. In *Feargrounds, LLC v. Old Time Contractors, Inc.*, Nos. WDQ-10-87 & WDQ-10-88, 2010 WL 1759577, at *1 (D. Md. Apr. 30, 2010), Old Time Contractors moved for summary judgment in bankruptcy court on the applicability of an automatic stay, and Feargrounds filed an untimely opposition. The bankruptcy court granted summary judgment without considering Feargrounds's untimely opposition, and Feargrounds appealed. *Id.* Feargrounds argued that its opposition was untimely for the "excusable" reason that its attorney "misread[] the rules governing the time for filing the opposition." *Id.* at *2. Rejecting this argument, this Court affirmed the bankruptcy court. *Id.* at *2. In *Hayward v. McCabe*, No. 1:11-cv-644-RBH, 2012 WL 1096101, *1 (D.S.C. Mar. 30, 2012), the respondent moved for summary judgment on the petitioner's habeas corpus petition, and the petitioner did not respond until the

8

court twice ordered him to do so. A magistrate judge issued a report and recommendation in the respondent's favor, and the petitioner did not file a timely objection. One day after the time for objecting had passed, the petitioner moved for an extension of time to file an objection, attributing his delay to limited access to the prison mailroom. The court denied the petitioner's motion and granted the respondent's summary judgment motion. The petitioner once again filed a motion for extension of time "on the same grounds as his previously denied motion for extension of time." *Id.* The court denied the motion, noting that the petitioner mailed his motion after the deadline and had "been dilatory in other respects in his handling of this matter," such as by failing to respond to a court order and by taking almost two months to respond to the respondent's summary judgment motion. *Id.* at *2. The court reasoned: "Petitioner has not shown good cause or excusable neglect for failing to file his objections to the Report or a timely motion for extension of time. Petitioner should not have waited until the last minute to request additional time, assuming that the Court would grant his request." *Id.* at *3; *see also Tabod v. Avis Rent A Car Sys., Inc.*, HAR-92-334, 1993 WL 455231, at *1 (D. Md. Sept. 14, 1993) (granting unopposed motion for summary judgment, which the Court found to be meritorious, after *pro se* plaintiffs failed to file opposition or request an extension of time to do so; noting that, even though counsel withdrew, the plaintiffs were "not relieved of their ongoing obligations to pursue their claims in accordance with Maryland law and the unequivocal deadlines established by the Scheduling Order and the Local Rules"); *Colony Apts. v. Abacus Project Mgmt., Inc.*, 197 F. App'x 217, 224 (4th Cir. 2006) (affirming this Court's denial of Colony's request to file untimely supplement to its opposition to summary judgment because "Colony cannot demonstrate excusable neglect because it cannot establish sufficient reason for the delay,"

where it appeared that newly-appointed counsel sought to supplement out of "a desire to re-do much of prior counsel's efforts, now finding them somewhat lacking").

### A. The Reason for the Delay

Ms. Wonasue primarily attributes her delay to the fact that Defendants allegedly "withheld the transcript [of Plaintiff's deposition] that [they] rel[y] upon," despite Plaintiff's counsel's repeated requests for the transcript, as "required under the Federal Rules of Civil Procedure and also the Rules of Evidence." Pl.'s Mot. 2. She insists that "the discovery rules provide" that Defendants must give a copy of the transcript to her because she "has no desire for the transcript *except* in the circumstance that Defendant relies on it as evidence." Pl.'s Reply 2. Plaintiff does not cite any authority for her assertions, which is unsurprising, because they do not relate accurately what the discovery and evidence rules require.[2]

In Defendants' view, Ms. Wonasue is making a "specious argument" for the production of the transcript pursuant to Fed. R. Civ. P. 34, noting that other courts have rejected this argument and held that a transcript is available pursuant to Fed. R. Civ. P. 30(f)(3) upon payment to the court reporter. Defs.' Opp'n 2–3. Defendants insist that "under Rule 30(f)(3), Wonasue's deposition transcript is the property of the court reporter, and without payment to the court reporter, Defendants are not required to produce it absent a court order." *Id*. at 4. Defendants assert that Ms. Wonasue had the opportunity to read and review the transcript, but never did so. Defs.' Opp'n 5. Additionally, Defendants contend that "Wonasue does not argue that the cost of

---

[2] Instead of citing the relevant procedural or evidence rules, Ms. Wonasue states that she will set forth this argument in her Response to Defendants' Motion for Summary Judgment. Pl.'s Mot. This will not do. Demonstration of good cause or excusable neglect is a condition precedent to filing an opposition to Defendants' summary judgment motion. The inability of Plaintiff to identify the very rules that she contends demonstrate why her motion should be granted speaks volumes about whether it has merit.

obtaining the emailed, condensed, or complete transcript from the court reporter is cost prohibitive to her." *Id*.

In her Reply, Ms. Wonasue insists that she did argue, "at the beginning of [her] Motion, . . . 'that the cost of obtaining the emailed, condensed, or complete transcript from the court reporter is cost prohibitive to her,'" such that "there *is* a 'reason for this Court to override the provisions of Rule 30(f).'" Pl.'s Reply 6 (quoting Defs.' Opp'n 5). As best I can determine, Ms. Wonasue refers to her claim that she "is still attempting to salvage her home, other personal financial matters and to recover to the extent that she is able to from the financial damages caused by her wrongful termination," and her contention that Defendants are trying "to exploit Plaintiff'[s] financial circumstances for their own benefit" by suggesting that she "'purchase a copy of the transcript (like [Defendants] did).'" *Id*. at 1 & 3 (quoting June 19, 2013 email from Defense counsel, Pl.'s Mot. Ex. 1, ECF No. 65-1).[3]

> Plaintiff's argument is without merit. Contrary to her assertion, Rule 30(f)(3) provides:
>
> ***Copies of the Transcript or Recording***. Unless otherwise stipulated or ordered by the court, the officer must retain the stenographic notes of a deposition taken stenographically or a copy of the recording of a deposition taken by another method. *When paid reasonable charges, the officer must furnish a copy of the transcript or recording to any party or the deponent.*

Fed. R. Civ. P. 30(f)(3) (emphasis added). Of import, a litigant cannot "circumvent the obligation to pay for a transcript of a deposition" through a discovery request: "[A] Rule 34 request for production of a copy of the transcript cannot be used as a vehicle to avoid purchasing it from the reporter pursuant to Rule 30(f)(3)." Wright & Miller, *Fed. Prac. & Proc*. § 2117; *see*

---

[3] Plaintiff misquotes Defense counsel's email, which stated: "We have no obligation to provide you with a copy of the transcript. I suggest you contact Al Betz about purchasing a copy or speak with them about reviewing it." June 19, 2013 email from Defense counsel 1 (referencing Al Betz & Associates, Inc. court reporting service).

*Schroer v. United States*, 250 F.R.D. 531 (D. Colo. 2008); *Brant v. Principal Life & Disability Ins. Co.*, 195 F. Supp. 2d 1100 (N.D. Iowa), *aff'd*, 50 F. App'x 330 (8th Cir. 2002)

More fundamentally, regardless of Ms. Wonasue's misconception that Defendants had to provide the transcript to her, Plaintiff's inability to procure the transcript simply cannot justify her delay. Plaintiff's and Defendants' attorneys exchanged emails on *June* 19, 20, and 21, 2013 about the transcript and whether Defendants had to provide the complete transcript to Plaintiff, Pl.'s Mot. Exs. 1–3, ECF Nos. 65-1 – 65-3, *one month before* Defendants filed their Motion for Summary Judgment on *July* 19, 2013. This dispute could have been resolved before Defendants filed their motion, such that it would not have impeded Plaintiff's opposition. Yet Ms. Wonasue did not bring the dispute to my attention either before or after Defendants filed their motion. Rather, as noted, Plaintiff did not communicate with the Court with regard to her delay in filing an opposition or any reason for the delay at any time before she filed her Motion to Extend Time six weeks after her deadline. And, Ms. Wonasue does not suggest that she made any attempts to procure the transcript after June 21, 2013. Thus, Ms. Wonasue's lack of free access to the complete transcript does not explain or justify her delay in filing an opposition or requesting an extension of time to do so.

Ms. Wonasue also argues, again, inaccurately, that "the Court requested that the Defendants provide to counsel for the Plaintiff a cop[y] of the transcripts" at the last hearing. Pl.'s Mot. 3. Defendants responded that I ordered them to produce Defendant Nias's and UMAA's Rule 30(b)(6) corporate designee's deposition transcripts, but I "did not . . . order Defendants to produce a copy of Wonasue's deposition transcript at any time during this litigation." Defs.' Opp'n 4. As noted in my March 27, 2013 Letter Order, I ordered Defendants to "produce copies of deposition transcripts for Danita Nias and Defendant's Rule 30(b)(6)

12

corporate designee to the Court, as an email attachment, and the Plaintiff's counsel." March 27, 2013 Ltr. Order 1. I did not order Defendants to produce a copy of Ms. Wonasue's deposition transcript. *See id.*

Additionally, Ms. Wonasue suggests that her delay is due, in part, to her inability to pay her attorney. Pl.'s Mot 1–2. Plaintiff's counsel states that "due to her financial circumstances, Plaintiff has been unable to adhere to the terms of the firm's agreement," but "this firm has continued to represent and advocate for Plaintiff to the extent that [the firm is] able." *Id.* at 2. I do not question the financial difficulty that may face a person who wants to file an employment discrimination claim, nor the friction that may occur to the attorney–client relationship when a client fails to fulfill the financial obligations of a retainer agreement. However difficult this situation may be, it does not relieve the client from prosecuting her claim, nor the lawyer from his obligations to the client, and as an officer of the Court , so long as he remains counsel of record. Unfortunate though it may be, it is not an infrequent event for the Court to grant an attorney's motion to withdraw as counsel in a case because the client is not meeting her financial obligations or otherwise fulfilling her obligations to prosecute her claim. In such instances, the client may proceed *pro se*, and may even request that the court appoint *pro bono* counsel to represent her. What is not permissible is for the client and the attorney to disregard a scheduling order deadline for weeks, and then expect the Court to ignore, or condone, this action by granting a motion to file an untimely opposition to a pending motion for summary judgment.

Even taking counsel's representation at face value, it is questionable whether Ms. Wonasue has met her obligation to take steps to prosecute and fund her claims. *See* Fed. R. Civ. P. 41(b)(1) ("If the plaintiff fails to prosecute . . . , a defendant may move to dismiss the action or any claim against it."). Once again, Plaintiff's counsel has allowed the deadline to pass without

seeking an extension, and then waited six weeks before requesting an extension of time, without presenting any excuse for his failure to request an extension earlier. If the client no longer has the funds to pursue an action, and counsel's retainer agreement and conscience will permit counsel to withdraw, counsel should withdraw. *See* Md. R. Prof'l Conduct R. 1.16(b)(5)–(6). It is unacceptable to continue a client's representation while allowing deadlines to sail by without filing the appropriate pleadings or papers, or timely requesting an extension of those deadlines. *See id.* R. 3.2 & cmt. Moreover, Plaintiff's counsel is not solely to blame, as Ms. Wonasue repeatedly failed to pay her attorney or pursue her action in this Court. Thus, Ms. Wonasue's financial circumstances do not justify the delay, *see id.*; are not a reason beyond her control for not requesting an extension sooner; and do not militate for the conclusion that Ms. Wonasue's neglect was excusable. *See Fernandes v. Craine*, ---- Fed. App'x ----, 2013 WL 4427809, at *1–2 (4th Cir. Aug. 20, 2013).

Finally, Ms. Wonasue argues that Defendants "did not offer their proof [i.e., the transcript] in the proper authenticated form," and "unsworn, unauthenticated documents cannot be considered on a motion for summary judgment.'" Pl.'s Reply 4 (quoting *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)). Ms. Wonasue appears to be making the argument that she would make in an opposition to Defendants' summary judgment motion. Yet she did not file a timely opposition, and I am not granting her leave to do so now. She cannot circumvent her unjustified delay by presenting the argument couched in the framework of a motion for extension of time. And, in any event, Ms. Wonasue relies on twenty-year old case law[4] that no longer is current. As the United States District Court for the Middle District of North Carolina noted in *Slate v. Byrd*, No. 1:09CV852, 2013 WL1103275, at *2 n.5 (M.D.N.C. Mar. 15, 2013), *Orsi* has

---

[4] *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993).

been superseded by an amendment to Rule 56. Under Fed. R. Civ. P. 56, as amended in 2010, facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form. *See Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC-11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013) ("Importantly, 'the objection [now] contemplated by the amended Rule is not that the material "has not" been submitted in admissible form, but that it "cannot" be.'") (quoting *Ridgell v. Astrue*, No. DKC-10-3280, 2012 WL 707008, at *9 (D. Md. Mar. 2, 2012)).

Thus, Ms. Wonasue had the ability to file an opposition, or at least a motion for extension of time, earlier, before her response deadline. It was within her "reasonable control," but she did not act. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). In short, Ms. Wonasue has not provided a justifiable reason for her delay. *See Smith v. Look Cycle USA*, No. 1:11-cv-1080 (GBL/JFA), 2013 WL 1234074, at *5 (E.D. Va. Mar. 19, 2013) (no justifiable reason where counsel could have, but did not "contact[] the Court or opposing counsel prior to the deadline to indicate anticipating difficulty in timely filing)

### B. Other *Pioneer* Factors

I also will consider the other *Pioneer* factors, although it is clear that "the third *Pioneer* factor—the reason for the delay—is the 'most important'" and governs the outcome of this case. *See Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996); *Fernandes*, 2013 WL 4427809, at *2. As in *United States v. Pritchett*, No. 5:09-cv-322-F, 2011 WL 197763, at *4 (E.D.N.C. Jan. 20, 2011), "although [Ms. Wonasue's] delay is not likely to be unduly prejudicial to [Defendants], the other factors this court must consider weigh against making a finding that [Plaintiff has] demonstrated excusable neglect." The length of the delay

in filing the motion for an extension of time is six weeks, a considerable length of time. *See id.* (finding no excusable neglect where opposition "was overdue by almost a month"); *Key v. Robertson*, 626 F. Supp. 2d 566, 576 (E.D. Va. 2009) (looking with disfavor on motion for extension of time filed three days after deadline); *Hayward v. McCabe*, No. 1:11-cv-644-RBH, 2012 WL 1096101, *1 (D.S.C. Mar. 30, 2012) (finding no good cause or excusable neglect for filing opposition one day late). Also, the length of the delay in filing the opposition is greater still, due to the time dedicated to briefing and ruling on the motion for an extension of time. Further, the delay is compounded by the myriad previous delays in this case. Although Plaintiff's repeated delays and failure to act before the deadline do "not necessarily lead to a conclusion of bad faith, such actions and omissions do not counterbalance the detriment of the third Pioneer factor focusing on the reason for the filing delay." *See Smith*, 2013 WL 1234074, at *5. As in *Smith*, 2013 WL 1234074, at *5, "Plaintiff's counsel [has] fail[ed] to make a showing to overcome the significant impact of the third factor." Clearly, this case is extraordinary only for Plaintiff's counsel's perseverance in name only, with no diligent action on Plaintiff's behalf, or for the litany of extensions granted to date, and the lack of merit in prior substantive filings Plaintiff has made. It is not one of "the *extraordinary cases* where injustice would . . . result" if I did not find excusable neglect. *Thompson*, 76 F.3d at 534; *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 220 (4th Cir. 2011) (same). Plaintiff has not shown that her neglect was excusable. *See Pioneer*, 507 U.S. at 395; *Thompson*, 76 F.3d at 534; *Fernandes*, 2013 WL 4427809, at *2.

**C. Good Cause**

On a motion for extension of time to file an opposition filed after the deadline for filing the opposition, the movant must show "good cause . . . *and* [that] 'the party failed to act because of excusable neglect.'" *Hayward*, 2012 WL 1096101, at *1 (quoting Fed. R. Civ. P. 6(b)(1)(B)).

16

With regard to requested modifications to a scheduling order, the "'primary consideration'" in determining whether good cause exists "is 'the movant's diligence.'" *Johnson v. Balt. City Police Dep't*, No. WDQ-12-646, 2013 WL 1833021, at *3 (D. Md. Apr. 30, 2013) (quoting *Mesmer v. Rezza*, No. DKC-10-1053, 2011 WL 5548990, at *5 (D. Md. Nov. 14, 2011)). Indeed, "'[l]ack of diligence and carelessness are the hallmarks of failure to meet the good cause standard.'" *Id*. (quoting *Mesmer*, 2011 WL 5548990, at *5) (internal quotation marks omitted)).

Plaintiff has not acted diligently in filing an opposition or her motion for an extension of time. As discussed at length above, she delayed six weeks in requesting additional time, without justification. Moreover, her entire case is fraught with indications that Plaintiff is not acting diligently, as she repeatedly has requested extensions of time, disregarded the Court's scheduling order, and made meritless representations to the Court. Plaintiff has not met the good cause standard. *See id.*

## III. CONCLUSION

Ms. Wonasue has not shown excusable neglect or good cause for her delay in filing her opposition or her Motion to Extend Time to file her opposition. Therefore, her motion is DENIED. *See* Fed. R. Civ. P. 6(b)(1)(B).

Because I am denying Ms. Wonasue's motion, I will be considering Defendants' summary judgment motion as unopposed, such that "those facts established by the motion" will be "uncontroverted." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Nonetheless, Defendants will have to demonstrate that, based on those facts, they are entitled to judgment as a matter of law, because "[t]he failure to respond to the motion does not automatically accomplish this." *Id.* Thus, although this ruling prevents Plaintiff from opposing summary judgment, it is not a sanction, let alone a dispositive sanction.

A separate order shall issue.


Dated: October 17, 2013 /S/
Paul W. Grimm
United States District Judge

lyb